Wilma **EVERITT**, On Behalf of Herself and All Others Similarly Situated, Plaintiff-Appellant,

v.

The **CITY OF MARSHALL**, et al., Defendants-Appellees.

No. 82–2134.

United States Court of Appeals, Fifth Circuit.

April 22, 1983.

---

Kris King, East Texas Legal Services, Inc., Longview, Tex., James W. Heidelberg, Branton & Mendelsohn, Inc., San Antonio, Tex., for plaintiff-appellant.

Jason R. Searcy, Marshall, Tex., for defendants-appellees.

Before WISDOM, RUBIN and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff Ms. Everitt, a black woman who was discharged from her position with the city police department, appeals from the dismissal of her action against the City of Marshall, Texas, and various of its officials. Her suit is based upon alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as of 42 U.S.C. §§ 1981, 1983. By her appeal, she contends: (1) that the district court erred in dismissing her individual claim that her discharge was racially motivated; and (2) that it also erred in denying her motions for class certification to represent all black past, present, and future employees of the city allegedly subjected to across-the-board racial discrimination.

We affirm, finding (1) that the district court's dismissal of Ms. Everitt's individual claim is founded on factual findings that are not clearly erroneous, and (2) that its denial of class certification is not shown to be an abuse of discretion, since in view of the district court's non-erroneous dismissal of her individual claim under the circumstances presented by this record, Ms. Everitt's claim of discrimination lacks nexus with that of the proposed class, and she is not a member of the class of discriminatees she seeks to represent. Fed.R.Civ.P. 23(a).

### 1. *The Plaintiff's Individual Claim*

■ The plaintiff Everitt was employed by the city as a police dispatcher from December 1977 until September 1978. She advanced from probationary status to become a permanent civil service employee as a result of extremely favorable work-evaluations. She was discharged on September 25, 1978, because of dereliction of duty. Her dereliction was her averring there were no outstanding warrants when police officers called in for a warrant check, although in fact there were—the deduction being that she failed to check for them but simply responded quickly that there were none. This discovery occurred because other officers—having suspected her prior negligence in such check—called in during September 21 and 22 for warrant checks in instances where there *were* known to be outstanding warrants, but still receiving her assurance that her check for them was negative. The district court found as a fact that she had failed to check for warrants when requested to do so by police officers in the field, that the failure to check for warrants could endanger the lives of these officers, and that she was discharged for this dereliction of duty.

In contending that the alleged dereliction was a pretext and that the other (white) police officers had manufactured the incident (inferentially, by pulling outstanding warrants so that Ms. Everitt could not find them when she checked for them upon their requests), Ms. Everitt contends that the conduct of the white police officers was in retaliation for her objections to racially discriminatory and racially derogatory comments to which she had been subjected by her non-supervisory fellow white officers (of which she had not complained to the chief of police prior to her discharge). The district court did not "condone the contemptuous racial statements by the officers", but held that Ms. Everitt had "failed to prove that her termination was motivated by or resulted from discriminatory animus."

Although Ms. Everitt makes out a persuasive case that her racially prejudiced colleagues set up a trap for her, ultimately, the issue is whether her own testimony or that of the other officers is more credible. We cannot say that the district court's findings of fact based upon its credibility evaluations are clearly erroneous, Fed.R.Civ.P. 52(a), so as to admit of reversal. Thus, the employer having produced a legitimate nondiscriminatory reason for her discharge, the plaintiff Everitt did not meet her burden of persuasion that the advanced reason for her discharge was pretextual and "that a discriminatory reason more likely motivated the employer" or "that the employer's proferred explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

We therefore affirm the district court's dismissal of Ms. Everitt's individual claim.

### 2. *Denial of Class Certification*

The district court denied Ms. Everitt's motion for class certification after an evidentiary hearing, some six months before the trial on the merits of her individual claim. The evidence at the certification hearing consisted of a statistical expert's testimony analyzing black employment by the city and tending to show across-the-board discrimination, the testimony of the city's personnel director showing employment practices (including documents pertaining to employment regulations applicable to the city), and the plaintiff Everitt's own stipulated testimony as to the alleged racially discriminatory practices to which she herself had been subjected.

The district court's denial of class certification was based upon its finding that the discriminatory practices to which Ms. Everitt claimed she had been subjected lacked the requisite commonality and numerosity required by Fed.R.Civ.P. 23(a)[1] with the

---

1. Fed.R.Civ.P. 23 provides, in pertinent part:
 (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued, as representative parties on behalf of all only

if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representa-

**210**

class she purported to represent of all black past, present, and future employees of the city. The district court reached this conclusion upon its analysis that Ms. Everitt was under the firemen's and policemen's civil service regulations and thus subject to different hiring, promotion, supervision, demotion, and discipline regulations than the unclassified employees in the other thirteen municipal departments, with whom she therefore lacked commonality, Rule 23(a)(2); and that there were only eight black employees in the civil-service-tenured municipal fire and police departments, so that she had failed to demonstrate that the class of black applicants and employees was so numerous that joinder of all members was impracticable, Rule 23(a)(1).

The plaintiff Everitt presents an impressive argument that the asserted racially discriminatory practices were common to both civil service and unclassified employees. However, for reasons to be stated, we conclude that, on the record before us as a whole, Ms. Everitt is not a proper class representative because she neither has claims typical of the members of the class nor has an adequate common interest or nexus with them.

### (a) Relevant Legal Principles

The following principles are relevant to our affirmance of the denial of class certification:

■ "An individual seeking to maintain a class action under Title VII must meet 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a). [Citation omitted.] These requirements effectively 'limit the class claims to those fairly encompassed by the plaintiff's claim.' " *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). "[A] class representative must be part of the class and 'possess

the same interest and suffer the same injury' as class members." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).

■ Further, "[w]here no class has been certified, ... [on appellate review] the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiff's individual claims." *Rodriguez, supra,* 431 U.S. at 406 n. 12, 97 S.Ct. at 1898 n. 12. Thus, where a plaintiff alleging employment discrimination appeals the dismissal of both the individual claim and the denial of class certification, the affirmance of the dismissal of the individual claim may be "fatal" to the class certification claim because of the employee's "lack of nexus with, and membership in, the class." *Satterwhite v. City of Greenville,* 578 F.2d 987, 992 (5th Cir. 1978) (en banc), *vacated and remanded on other grounds,* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980), *remanded,* 634 F.2d 231 (5th Cir.1981). When an employee's individual claim of injury resulting from employment discrimination is dismissed, such employee "is not a member of the class of discriminatees [the employee] seeks to represent" and "has never suffered any legally cognizable injury either in common with [the proposed] class or otherwise." *Id.*

### (b) The Claims of Class Discrimination

■ In addition to her claim for individual relief, Ms. Everitt brought suit on behalf of all past, present, and future employees of all fifteen municipal departments of the City of Marshall. The class aspect of the action was to obtain declaratory, injunctive, or other appropriate relief to end eight specified racially discriminatory practices.[2]

---

tive parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . .

2. The stipulation by pretrial order specifies these to be:

Of these, the certification hearing reveals that Ms. Everitt herself had not even arguably been subjected to discrimination in recruiting, hiring, promotion, job assignment, or compensation. (In fact, as stipulated, she "received the same pay and performed the same duties as other dispatchers in the City of Marshall Police Department with the same or similar longevity or seniority.") Since Ms. Everitt herself " 'could have suffered no injury as a result of the[se] discriminatory practices, [she was], therefore, simply not eligible to represent a class of persons who did allegedly suffer [such] injury.' " *Falcon, supra,* —— U.S. at ——, 102 S.Ct. at 2370. Further, her stipulated testimony at the certification hearing (as well as her EEOC complaint introduced thereat) would indicate only that she herself had been subjected to racial slurs by her white police colleagues and does not show that other black employees were similarly harassed.[3] She thus did not by this issue raise a question of law or fact common to the class. Fed.R.Civ.P. 23(a)(2).

Ms. Everitt's remaining complaints were of allegedly racially discriminatory practices with regard to the discharge of black employees, including retaliation against

1. Compensating black employees at lower salaries than similarly situated white employees;
2. Promoting black employees on a less frequent basis than similarly situated white employees;
3. Discharging black employees for reasons which would not result in discharge of similarly situated white employees;
4. Countenancing the maintenance of a racially discriminatory work environment by refusing or failing to take appropriate disciplinary action with respect to racial slurs occurring in the work place;
5. Retaliating against minority employees who challenged defendants' discriminatory practices by terminating their employment;
6. Relying almost exclusively upon reports and recommendations of white employees in making decisions with respect to the employment status of black employees, including, but not being limited to hiring, promotions, and terminations;
7. Discriminatory hiring to various job positions by race; and
8. Assigning jobs on a racially discriminatory basis.

them by terminating their employment if they challenged racially discriminatory practices. With regard to Ms. Everitt, the trial on the merits of her individual claim resulted in a determination that she herself "was not a victim of discrimination. Even if she would have appeared to be an appropriate representative on [the date of the district court's denial of class certification], she is not now an appropriate representative. . . . This defect is fatal" to her claim on appeal that the district court's denial of certification was an abuse of its discretion. *Satterwhite, supra,* 578 F.2d at 993.

As we stated in similar circumstances in *Camper v. Calumet Petrochemicals, Inc.,* 584 F.2d 70, 71–72 (5th Cir.1978):

[The plaintiff former employee] is not a member of the class of discriminatees he seeks to represent. He has failed to prove that he suffered any injury, either as a member of the class or as an individual. He is no longer an employee of [the defendant employer] and is not subject to the alleged discriminatory practices; he is a past employee but this court has affirmed that his discharge was not discriminatory. Thus, he is not eligible to represent class members who allegedly

3. At the trial on the merits of Ms. Everitt's individual claim some months later, two black police officers testified that they had heard racial slurs or jokes told by white officers (although not addressed to them personally). The chief of police denied that he knew of these racial slurs; he testified that, upon learning of Ms. Everitt's complaint subsequent to her discharge, he had emphasized at a supervisors' meeting that no racial slurs would be tolerated in the work-environment, and that he had heard no subsequent complaint. Even assuming that this merit-testimony (some months subsequent to the proper denial of certification on the issue on the showing made at the certification hearing) might have warranted reconsideration of the denial, the plaintiff ("with the primary responsibility for pressing a class action claim", *Satterwhite, supra,* 578 F.2d at 999) did not move to "modify [the certification order] in the light of subsequent developments in the litigation", *Falcon, supra,* 457 U.S. at 160 & n. 16, 102 S.Ct. 2372 & n. 16, so as to certify Ms. Everitt as representative of at least a class of city employees subjected to racial slurs and a racially-biased work-environment.

were injured by racial discrimination [in their discharge].

*Conclusion*

Accordingly, we AFFIRM the judgment of the district court that dismissed the plaintiff's suit, finding that the denial of her claim for individual relief was based upon factual determinations that are not clearly erroneous, and that the denial of class certification was not in the light of the full record an abuse of discretion.

AFFIRMED.