723 F.2d 1195
 33 Fair Empl.Prac.Cas. 1521,
33 Empl. Prac. Dec. P 34,160
Joan Rance VUYANICH, Plaintiff-Appellee Cross-Appellant,
and
Marisu Fenton, Intervenor-Appellee,
Marjorie Lee Jackson and Dorothy Hooks, Intervenors-Appellants,
and
Portia Williams and Martha Davis, Movants-Appellants,
v.
REPUBLIC NATIONAL BANK OF DALLAS, Defendant-Appellant
Cross-Appellee.
Ellen JOHNSON, Plaintiff-Appellee Cross-Appellant,
v.
REPUBLIC NATIONAL BANK OF DALLAS, Defendant-Appellant Cross-Appellee.
 No. 81-1357.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 30, 1984.
 
 Donald W. Anderson, Chicago, Ill., Wayne S. Bishop, Bruce L. Downey, Richard K. Walker, Bishop, Liberman, Cook, Purcell & Reynolds, Washington, D.C., for Republic Nat. Bank.
 JoAnn Peters, Dallas, Tex., for Vuyanich, Jackson, Hooks, Williams and Davis.
 Linda N. Coffee, Dallas, Tex., for Johnson.
 Richard L. Arnold, Dallas, Tex., for Fenton.
 Appeals from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 Two decisions by the Supreme Court of the United States handed down after the district court's final judgment significantly altered the pertinent law of this Circuit. These decisions require that we vacate the district court's underlying class certification order. This holding, in turn, necessitates a remand for reconsideration of the more limited class rights that the plaintiffs could properly assert and vacation of the order allowing intervention by persons seeking to assert rights not within the periphery of those limited class claims.
 
 
 2
 * A thorough recitation of the facts and procedural history of this massive Title VII class action litigation is available in the published district court opinions. See 409 F.Supp. 1083 (N.D.Tex.1976); 78 F.R.D. 352 (N.D.Tex.1978); 82 F.R.D. 420 (N.D.Tex.1979); 505 F.Supp. 224 (N.D.Tex.1980); 521 F.Supp. 656 (N.D.Tex.1981). For the reader's convenience, we briefly summarize here the facts necessary for our disposition of the case.
 
 
 3
 Joan Vuyanich began working as an agent contact clerk in Republic National Bank's Money Order Department on April 29, 1969. She was the only black employee in that department. Shortly after beginning her job, she began having problems with two white female co-workers. She complained to her supervisors, and the situation was temporarily rectified.
 
 
 4
 On June 29, 1969, Vuyanich married a white male. One month later, her supervisors met her husband. Shortly thereafter, her supervisor told Vuyanich she should resign. The supervisor gave as reasons her clashes with her co-workers, her complaints about her workload, and her not being suitable for the job. When Vuyanich inquired about a transfer, her supervisor replied that she probably did not need a job since her husband was white. Vuyanich was discharged on July 28, 1969.
 
 
 5
 Less than two weeks later, Vuyanich filed a race discrimination charge against the Bank with the Equal Employment Opportunity Commission. She alleged a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17. The EEOC issued a finding that a reasonable basis existed to believe that a Title VII violation may have occurred. Conciliation efforts were unsuccessful, and the EEOC issued a statutory right-to-sue letter. On March 22, 1973, Vuyanich filed suit in the district court.
 
 
 6
 Ellen Johnson applied at the Bank in September 1971 for a position as a management trainee or in personnel administration. After being told that there were no openings in these positions, she asked for any position available. She was not offered a job of any kind. In October 1971, Johnson filed a charge against the Bank with the EEOC asserting race and sex discrimination in several employment practices. The EEOC issued a determination of reasonable cause for most of the allegations. On December 3, 1973, one month after a right-to-sue letter was issued, Johnson filed suit in the district court. The cases were consolidated in 1976.
 
 
 7
 On March 15, 1978, after a two-day hearing, the district court certified the following class:
 
 
 8
 All females of all races and all blacks of either sex; 1) who are or have been employed by the Republic National Bank on or after February 16, 1969, and 2) who applied for employment but were not hired at the Republic National Bank on or after February 16, 1969 to date.
 
 
 9
 78 F.R.D. at 354. After a second hearing, the court reaffirmed its class composition and divided the class into five subclasses. The district court simultaneously approved three intervenors as additional class representatives. These three intervenors were Marjorie Lee Jackson, Marisu Fenton, and Dorothy Hooks, all female former employees. The five certified subclasses and designated representatives were as follows:
 
 
 10
 Subclass
 Subclass Representative(s)
 -------- -----------------
black and female employees Ellen Johnson
who were exempt from the Majorie Lee Jackson
provisions of the Fair
Labor Standards Act
female nonexempt employees Marisu Fenton
black nonexempt employees Joan Vuyanich
 Dorothy Hooks
unsuccessful black and female Ellen Johnson
applicants for exempt
positions
unsuccessful black applicants Ellen Johnson
for nonexempt positions
 
 
 11
 505 F.Supp. at 233 (footnote omitted).
 
 
 12
 After the liability phase of the trial, which lasted twenty-four days, the district court found that the Bank had discriminated against some of the subclasses in certain employment practices for a period of the time alleged. Specifically the court found that the Bank discriminated against (1) black applicants for nonexempt jobs from 1969-1974; (2) female applicants for exempt jobs from 1969-1974; (3) black employees in pay from 1973-1978; (4) black exempt employees in promotion and placement from 1973-1978; (5) black and female nonexempt employees in promotion and placement from 1969-1978; and (6) female employees in maternity leave practices during 1969-1970. The court dismissed the plaintiffs' claims of discrimination in hiring, pay, promotion, placement, maternity leave practices, and terminations.
 
 II
 
 13
 Following Fifth Circuit precedent, the district court relied on the across-the-board theory of class certification. See 505 F.Supp. at 234-37. After the district court rendered its decision, however, the Supreme Court, in reversing a panel of this court, ruled that the across-the-board theory is appropriate only in limited instances. General Telephone Co. v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 2371 & n. 15, 72 L.Ed.2d 740 (1982), rev'g 647 F.2d 633 (5th Cir.1981).
 
 
 14
 Falcon teaches that an allegation of discrimination neither determines the appropriateness of a class action nor defines the scope of any potential class. 102 S.Ct. at 2371.Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.
 
 
 15
 Id. (footnote omitted).
 
 
 16
 The Court reiterated the rule that the requirements of Rule 23(a) "limit the class claims to those fairly encompassed by the named plaintiff's claims." Id. at 2370 (quoting General Telephone Co. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). In addition, a class representative must "possess the same interest and suffer the same injury" as the class members. Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929-30, 41 L.Ed.2d 706 (1974); see also East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).
 
 
 17
 In the present case, Vuyanich and Johnson, who both possessed limited claims, have been permitted to assert class claims that are neither common nor typical of their personal claims. Vuyanich's claims should have been limited to race discrimination in her termination as a nonexempt employee. Her complaint filed with the EEOC contained only these allegations. Yet her complaint in this action alleged on behalf of herself and other blacks and females presently or previously employed, wide ranging claims of sex and race discrimination in, among other areas, placement, compensation, and promotion. Johnson's claims should have been limited to sex discrimination in hiring exempt employees. In her complaint, Johnson alleged sex and race discrimination in hiring. Her class claims, however, alleged only sex discrimination. The district court certified her as a representative of all black and female applicants for both exempt and nonexempt positions and of all black and female exempt employees with promotion, compensation, and transfer claims.
 
 
 18
 In arguing that Falcon did not foreclose all across-the-board class actions, the plaintiffs rely on this language by the Court:
 
 
 19
 If petitioner used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.
 
 
 20
 102 S.Ct. at 2371 n. 15. In addition, the plaintiffs cite two post-Falcon cases, Carpenter v. Stephen F. Austin University, 706 F.2d 608 (5th Cir.1983), and Richardson v. Byrd, 709 F.2d 1016 (5th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), in which across-the-board class actions were upheld on appeal.
 
 
 21
 Both Carpenter and Byrd specifically relied on the language from footnote fifteen in Falcon to sustain those broad class actions. Richardson, 709 F.2d at 1019-20; Carpenter, 706 F.2d at 617. Footnote fifteen of Falcon observed that if significant proof of a general policy of discrimination was present, it would justify an across-the-board class action. Such proof was not present here. The district court's finding that the Bank relied on two objective inputs--education and experience--in its necessarily subjective hiring process, 505 F.Supp. at 371-72, precludes reliance on this "general policy of discrimination" exception. The district court's class certification must be vacated and remanded for reconsideration of the proper class in light of Falcon.[1]
 
 
 22
 The district court's across-the-board class certification also implicated the named plaintiffs' standing to assert certain claims. Under principles of standing, the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975). In Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1983), also decided after the district court's final decision, the Supreme Court addressed the relationship between standing and class actions. The Court reasoned:
 
 
 23
 It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.
 
 
 24
 102 S.Ct. at 2784. The named plaintiffs must establish the requisite case or controversy between themselves and the defendants, otherwise "none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (footnote omitted). Because Johnson and Vuyanich can allege injuries only as a result of the Bank's hiring and termination practices, respectively, they lack standing to assert class claims arising from the bank's other employment practices--compensation, promotion, placement, and maternity practices.
 
 
 25
 The plaintiffs' arguments that their threatened injury arising from these other practices satisfies the standing threshold is unpersuasive. The Supreme Court has stated that a threat of injury must be both " 'real and immediate,' not 'conjectural' or 'hypothetical.' " Id., 94 S.Ct. at 675. There is nothing real or immediate about the possibility that if Johnson had been hired or if Vuyanich had not been terminated, either or both of them might have been subjected to discrimination in compensation, promotion, placement, or maternity benefits. The district court's judgment relating to class claims affecting compensation, promotion, placement, and maternity, as well as race discrimination in hiring, is vacated. Those aspects of the plaintiff's complaints should be dismissed without prejudice to the rights of the putative class for lack of standing.
 
 
 26
 The class action device has proven a useful tool to secure redress of broad-based grievances in a just, speedy, and inexpensive manner. Falcon teaches, however, its efficiency has limits. In today's case, the device was improperly used to multiply two significant but discrete classes of claims involving hiring and termination into a full-scale attack on every employment practice of a major metropolitan bank. This extension of the litigation to claims the named plaintiffs could not raise not only violates rudimentary principles of typicality, commonality, and standing but also creates such a legion of claims and defenses that sheer volume tends to obscure the valid rights of the proper classes and such rights as the members of improperly joined classes may be able to assert in another action.
 
 
 27
 The district court allowed intervention by three female former employees who sought to intervene and assert claims of injury relating to promotion, transfer, compensation, job classification, and job assignment. Since these intervenors had not filed timely charges with the EEOC, they were required to "proceed ... within the periphery of the issues which [the named plaintiffs] could assert." Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir.1968). Thus, intervention cannot bootstrap the court's jurisdiction to encompass claims regarding practices broader than the hiring and termination claims properly assertable by the named plaintiffs.
 
 
 28
 The plaintiffs urge that Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir.1970), supports the allowance of the interventions. Sanchez says "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. at 466. This reasonable expectation rule requires that the scope of allegations made in a judicial complaint be "like or related" to allegations made in the EEOC charge. See, e.g., Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 928 (11th Cir.1983). Since Vuyanich and Johnson had standing to assert only sex discrimination in hiring or race discrimination in termination, Oatis v. Crown Zellerbach Corp. is determinative of the impropriety of allowing intervention.
 
 III
 
 29
 To meet the enormous problems of proof presented by the across-the-board class certified here, the district court used a complex multiple regression analysis to construct a "crude" gauge for testing the plaintiffs' prima facie case of pay, promotion, and placement discrimination. With the classes limited to proper bounds, it should not be necessary to draw upon this same approach in the reconsideration of the limited issues remanded. Thus, there is no need for this court to pass upon the propriety of using this method of proof on the present appeal. The Bank's challenge to the court's findings on maternity leave policies is in the same posture. We pretermit any ruling on that issue also. Finally, we decline to reach plaintiffs' cross-appeal contentions (1) that the district court erred in its rejection of their prima facie proof on phase I liability for pay, promotion, and placement discrimination against exempt females and pay discrimination for nonexempt black employees, and (2) that the district court imposed improper phase II proof burdens on class members when liability was established.
 
 
 30
 The Bank also challenges the district court's use of statistical proof to test the plaintiffs' claims of hiring discrimination. It contends the court impermissibly used the figures to establish disparate impact rather than disparate treatment, citing Pouncy v. Prudential Ins. Co., 668 F.2d 795 (5th Cir.1982), Pegues v. Mississippi State Employment Service, 699 F.2d 760 (5th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983), and Carroll v. Sears Roebuck & Co., 708 F.2d 183 (5th Cir.1983). This contention is based on language in the opinion characterizing the case as one of disparate impact, on the rebuttal burden imposed on the Bank, and on the absence of an express finding by the court of intentional discrimination. The plaintiffs respond that the district court correctly applied International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and that Pouncy should not be applied retroactively. They assert the proof shows statistically significant underhiring of blacks and females in comparison to the relevant labor market, a showing that was buttressed by adequate anecdotal evidence. The plaintiffs further assert that the burden assigned to the Bank was no more than that necessary to establish its affirmative defense that the application of neutral selection criteria caused the deviation. Since the issue is one that could be significant on remand, we hold that Pouncy is applicable to this case. Disparate treatment not disparate impact is the proper model for the statistical measurement of discriminatory hiring claims. To the extent that the statistical proof adduced cannot fit into the disparate treatment model, it should not be used on remand.
 
 
 31
 The judgment appealed from is vacated and the cause is remanded with directions to reconsider the determination of classes to be maintained in accordance with this opinion and to proceed to adjudicate the rights of the parties. Except as limited herein, the court shall have full discretion to determine what part, if any, of the proof previously taken shall be used in determining the rights of the parties and whether to hold additional hearings or take additional proof. The court neither makes nor intimates any view on the merits of any proper claim or defense that may be reasserted on remand.
 
 
 32
 VACATED and REMANDED.
 
 
 
 [1]
 Recent cases from this Circuit that are more similar to the instant case include Fleming v. Travenol Laboratories, Inc., 707 F.2d 829 (5th Cir.1983), in which this court affirmed a denial of class certification because the named plaintiff offered only unsupported allegations of discrimination regarding employment practices that had not adversely affected her. Id. at 832-33; see also Wheeler v. City of Columbus, 703 F.2d 853, 855 (5th Cir.1983) ("Discrimination in its broadest sense is the only question alleged that is common to Wheeler and the class she sought to create and represent.") In Everitt v. City of Marshall, 703 F.2d 207 (5th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983), this court concluded that the named plaintiff's discrimination claims lacked a sufficient nexus with those of the proposed class. The named plaintiff, a former city employee, was covered by civil service regulations different from those of the class she sought to represent. Therefore, the prerequisites of commonality and typicality were not satisfied. 703 F.2d at 210. In addition, the named plaintiff alleged injury as a result of a number of employment practices by which she had not been even arguably affected. Id. at 211. Thus, she could not represent those who did allegedly suffer injury from these practices. Id