INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL–CIO, et al., Plaintiffs,

v.

LTV AEROSPACE AND DEFENSE COMPANY, et al., Defendants.

Civ. A. No. 3–86–0205–H.

United States District Court,
N.D. Texas,
Dallas Division.

March 26, 1991.

James E. Youngdahl and James O'Connor, Little Rock, Ark., and Nell Hahn, Austin, Tex., for plaintiffs.

Michael V. Powell and Thomas L. Woodman, Locke Purnell Rain & Harrell, Dallas, Tex., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiffs' Motion for Class Certification, filed April 22, 1986, and related pleadings. The Court held a hearing on the present motion on January 22, 23, and 24, 1991. Following the hearing, the parties submitted additional briefing. The Court enters this Order pursuant to Federal Rule of Civil Procedure 23(c)(1) and (3).

For the reasons stated below, Plaintiffs' Motion for Class Certification is GRANTED in part and DENIED in part. The Court hereby makes the following findings of fact and conclusions of law. Any factual finding which is actually a legal conclusion should be deemed to be and treated as such, and any legal conclusion which is really a factual finding should be deemed to be and treated as such. The Court makes no determinations concerning the merits of the parties' claims and defenses.

## FINDINGS OF FACT

The following are the parties' stipulated facts.[1] *See* Joint Pretrial Order, filed January 24, 1990.

1. Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

2. Plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of American (UAW) and its Local 848 filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Those charges were No. 061–85–2266, dated May 13, 1985, and amended June 18, 1985, and No. 310–88–0989, dated January 12, 1988. Copies of the EEOC Right to Sue letters

_____

1. The Court lists all of the parties' stipulated facts even though several of them are unrelated to the Court's rulings.

are attached to Plaintiffs' Second Amended Complaint as "Exhibit 1" and "Exhibit 2."[2]

3. Plaintiff Thornton filed a Charge of Discrimination with the EEOC and received a copy of her right to sue, which notice is attached to the Second Amended Complaint and marked as "Exhibit 3." The Thornton charge was No. 061–85–3147, dated October 22, 1985.

4. Plaintiff McCauley filed a Charge of Discrimination with the EEOC and received notice of her right to sue, which notice is attached to the Second Amended Complaint and marked "Exhibit 4." The McCauley charge was No. 061–85–2218, dated May 20, 1985.

5. Plaintiff Wilson filed a Charge of Discrimination with the EEOC and received notice of her right to sue, which notice is attached to the Second Amended Complaint and marked "Exhibit 5." The Wilson charge was No. 061–86–2313, dated April 30, 1986.

6. Plaintiff Griffin has filed a charge with the EEOC. The Griffin charge was No. 061–86–1682, dated March 17, 1986.

7. The following named plaintiffs filed no separate individual Charges of Discrimination with the EEOC that are subject to this lawsuit: Beverly Ann Burton Candrilli, Haydee Mayorga, Loretta Jon Bell, and Elaine Lantz.

8. Plaintiff International Union, United Automobile, Aerospace and Agricultural Workers of America, AFL–CIO is a labor organization within the meaning of 42 U.S.C. § 2000e(d). It is the certified bargaining representative of a unit of the employees of defendant LTVAD at its facilities in the vicinity of Grand Prairie, Texas.

9. Plaintiff Local 848 is a labor organization within the meaning of 42 U.S.C. § 2000e(d). It administers and assists in the administration of the collective bargaining relationship at defendant LTVAD's facilities in the vicinity of Grand Prairie, Texas.

10. Plaintiff Beverly Ann Burton Iles Candrilli is an adult female, employed by LTVAD from November 26, 1984 to August 4, 1986.

11. Plaintiff Kimberly Thornton is an adult female, employed by LTVAD from November 13, 1984 to December 18, 1985.

12. Plaintiff Haydee Mayorga is an adult female, employed by LTVAD from February 26, 1968 to the present.

13. Plaintiff Loretta Jon Bell is an adult female, employed by LTVAD from January 15, 1968 to the present.

14. Plaintiff Elaine Gorenstein Lantz is an adult female, employed by LTVAD from July 8, 1980 to the present.

15. Plaintiff Kristi Mooney Wilson is an adult female, employed by LTVAD from May 20, 1986 to July 22, 1986.

16. Plaintiff Barbara McCauley is an adult female, employed by LTVAD from March 4, 1985 to May 17, 1985.

17. Plaintiff Selina Griffin is an adult female, employed by LTVAD from September 11, 1985 to November 21, 1985.

18. LTV Aerospace and Defense Company (hereafter, "LTVAD"), formerly known as Vought Corporation, is a corporation doing business in Texas, and operating facilities in the vicinity of Grand Prairie, Texas. It is an employer within the meaning of 42 U.S.C. § 2000e(b). On July 17, 1986, LTVAD filed a Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code in the United States District Court for the Southern District of New York, which petition remains pending. This suit concerns acts occurring before and after July 17, 1986, and is subject to the Consent Order dated January 24, 1989, in LTVAD's bankruptcy proceedings. Pursuant to the bankruptcy filing, proceedings in this case were stayed until early 1989.

19. Plaintiffs purport to bring this action as representatives of a class composed of past, present, and future female employees in jobs covered by the collective bar-

---

2. These charges, as well as others mentioned below, were entered into evidence at the hearing.

gaining agreement between plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO and its Local 848 (hereafter "UAW" or "the Union") and LTVAD (hereafter "bargaining unit jobs") and applicants for bargaining unit jobs at the facilities of defendant LTVAD in the vicinity of Grand Prairie, Texas who have been treated in a discriminatory manner because of their sex.

20. On or about November 26, 1984, defendant LTVAD hired Plaintiff Candrilli to work in its facilities in the vicinity of Grand Prairie, Texas.

21. Defendant Herman Lawson was a superintendent of the project section where Candrilli works.

22. Plaintiff Candrilli informed certain employees of LTVAD of the alleged sexual assault and battery.

23. On or about November 13, 1984, LTVAD hired plaintiff Thornton to work as an assembler aircraft B.

24. Plaintiff Thornton complained to LTVAD's Labor Relations Department that she had been sexually harassed by defendant Jerl Mullins.

25. Plaintiffs Mayorga and Bell were originally hired by LTVAD approximately 23 years ago and are currently employed at "Labor Grade 8" which is the next-to-lowest labor grade in its operation.

26. Plaintiff Lantz has been employed by LTVAD since July 8, 1980. Lantz was employed as a trainee and since October 6, 1980, has been employed as a tool and die maker beginner, tool and die maker C and tool and die maker B.

27. Plaintiff Lantz was placed in an on-the-job tool and die training class after being hired.

28. On or about April 8, 1985, plaintiff Wilson completed a training course in sheet metal assembly given at Mountain View College and sponsored by defendant LTVAD.

29. On or about March 4, 1985, LTVAD hired plaintiff McCauley to work as an aircraft assembler C.

30. Prior to her being hired, plaintiff McCauley completed a training course in sheet metal assembly given at Mountain View College and sponsored by defendant LTVAD.

31. Plaintiff McCauley was hired on March 3, 1985 as an assembler C.

32. On or about September 11, 1985, LTVAD hired plaintiff Griffin.

33. LTVAD terminated plaintiff Griffin.

In addition to these facts stipulated by the parties, the Court makes these further findings of fact.

The evidence regarding LTVAD's hiring process is briefly summarized as follows. During the period relevant to this suit, LTVAD obtained prospective UAW bargaining unit employees from referrals from the Texas Employment Commission, walk-ins to LTVAD's employment office, and recruiting visits to other cities with experienced aerospace worker populations. *See* Tr. II at 160–162, 171–172. Prospective employees completed application forms, on which they described their past work and pay histories, their educational backgrounds, and other information. *See* Pl.Ex. 19; Tr. II at 162–163. An interviewer then reviewed the form and made a decision whether to refer the applicant to a supervisor for a job interview. *See* Tr. II at 164.

Factors taken into account in making hiring decisions included whether there were job openings and whether the application had the qualifications for open jobs. LTVAD's affirmative action goals were also a factor in these decisions. Because LTVAD had, and presumably still has, goals for increasing the numbers of females in its workforce, interviewers tried to refer female applicants for interviews. *See id.* at 164, 166, 181–182; Kunkel Dep. at 36–37, 151–54.

After applicants were referred by the employment office, LTVAD supervisors with job openings interviewed those referred and made recommendations to the employment office as to whom to extend offers. *See* Tr. II at 166–167. The super-

visor may or may not give reasons for his recommendations; there is a considerable amount of discretion exercised in the hiring process. *See generally* Hester Dep.Vol. I at 47–89. Job offers were made to prospective employees by the employment office. *See* Tr. II at 168. Supervisors may also have recommended initial base wage rates for offerees, with those rates located between the minimum and maximum rates for the pertinent Collective Bargaining Agreement Labor Grade. *See id.* at 166–167; Def.Ex. 1 at 47–48; Def.Ex. 2 at 51–52. The factors that were taken into account in determining initial base rates were the offeree's prior experience and education, the rates being paid to employees already in the supervisor's unit, and the amount the offeree is or was making at her current, or immediately past, place of employment. *See* Tr. II at 167–168, 188. After receiving a job offer with an offered rate, the prospective employee decided whether to accept.

The collective bargaining agreement between LTVAD and the Union sets forth ten labor grades to which all bargaining unit employees are assigned. "L", connoting Lead, is the highest or best-paid labor grade; 9 is the lowest or worst-paid labor grade. For each of these ten labor grades, there is a minimum and maximum rate; these minimum and maximum rates may be as much as $6.00 per hour different. Labor grades also determine the amount of certain benefits enumerated in the contract such as group insurance with a greater benefit the higher the labor grade. *See* Pl.Ex. 13–15.

Once a supervisor decides to hire a particular applicant, the employment office extends an offer of employment if nothing is standing in the way, such as a failed drug test. The supervisor's recommendation as to the starting wage rate is one determinant of that issue. *See* Hester Dep.Vol. I at 71. There is no document establishing the standards under which the pay rate offered should be set. *See id.* at 80.

Al Sterling, the former Human Resources Department employee who was called back to develop a statistical database for defendant, testified that a foreman generally decides both the rate of pay to be offered a prospective employee, and his or her labor grade (*i.e.*, assembler B or assembler C classification) *See* Tr. II at 233. There were no guidelines or rules of thumb given these foremen for evaluating the different types of experience, education, or trade school training that might be considered relevant to these decisions. *See id.* at 234–35, 237–40. The system was subjective, in that two different foremen might rate the same background differently. In Mr. Sterling's words, when asked how two supervisors would weigh experience, "people are people. It would vary. There are no two people who would do two things alike." Tr. 237–38.

LTV's June 30, 1989 directive on salary policies, *see* Pl.Ex. 48, reveals the subjectivity of the setting of salary rates at the company. For example, it indicates that new hires should be paid an "appropriate" rate (p. 1). Similarly, (p. 3) with respect to paying those people who were promoted, the directive indicates that they should be paid "an appropriate rate using a range of 5 to 15 percent above the present rate ...", among other considerations.

Ruby Roberts testified that, despite her previous experience as an aircraft assembler at General Dynamics Corporation doing riveting and countersinking, she was hired into the predominantly female department of Sealant, and given menial work. *See* Pl.Ex. 129 (Roberts Declaration).

Sharon Mitchell was initially placed in a job not accurately matched to her skills and experience, and believes that she was discriminated against when she attempted to move to a job commensurate with her experience. *See* Pl.Ex. 127 (Mitchell Declaration).

Karen Namani alleges that she was discriminated against in labor grade and pay which resulted in her doing the same work as males, but with less pay and other benefits. *See* Pl.Ex. 128 (Namani Declaration).

The following findings are based upon a statistical analysis of the data contained in the EIS data tapes provided plaintiffs in discovery:

(a) Only two women were hired into jobs in EEO category 4, technicians, from November, 1984 to May, 1989. Only six women were hired into EEO category 6, skilled craft. *See* Pl.Ex. 69.

(b) In all the other EEO categories that contained bargaining unit employees, in which there were available jobs in more than one pay grade, women were disproportionately placed in jobs in lower pay grades within EEO categories. These disparities were statistically significant at generally accepted levels. *See* Pl.Ex. 67–71; 121 at 9, 17–18. These facts support an inference that males are preferentially assigned to higher-paying jobs upon initial hire.

Analyses of covariance performed by Plaintiffs' expert showed that, after controlling simultaneously for the characteristics for which reliable information was available, which might be expected to explain variations in initial pay at hire, the sex of the person hired had a statistically significant effect on starting salary, both overall and after controlling for the EEO category of the job at hire. In general, females hired during the class period were shown to receive a lower initial starting salary than similarly-situated males. *See* Pl.Ex. 72–75; 121 at 9, 19–20.

Defendants admit the existence of the disparities described above but state that legitimate, nondiscriminatory factors explain them. The Court does not today rule on the merits of Plaintiffs' claims or LTVAD's defenses, nor does it apply a preponderance of the evidence standard when reviewing the evidence.

LTVAD's Medical Department is responsible for physically examining of all new employees. The Medical Department also examines employees exposed to certain hazards, employees with certain diseases such as diabetes and hypertension, pregnant employees, and employees returning to work after an injury or illness. Generally, the Medical Department examines employees to be sure they can do a job. *See* Tobey Dep. at 25, 60–62. The Physical Demand Analysis for a job states the physical requirements for a job; the Functional Capacity Record states the corresponding functional capacity or capacity to work of an individual. Both use grades for various factors. *See id.* at 53.

LTVAD's male medical director allegedly regularly told female employees and applicants that the jobs they sought required heavier lifting than was actually involved in an effort to discourage females from pursuing such employment. *See* Tr. I, 34–35 (testimony of Lantz); Pl.Ex. 127 (Mitchell Declaration); Pl.Ex. 128 (Namani Declaration).

As of May 18, 1989, 1594 bargaining unit jobs required a lifting capacity of 3 or above. Of these jobs, 80, or 5.02 were held by females. *See* Pl.Ex. 50, 105, 106. In contrast, females made up 10.52% of the workforce in all bargaining unit jobs as of the same date. This difference in proportions is statistically significant, with an associated probability of less than 1 in 1000. *See* Pl.Ex. 105; 121 at 31.

The collective bargaining agreement governing promotions at LTVAD has extensive, detailed written regulations governing the promotion procedures, job classifications, job families, labor grades, and probationary employees at LTVAD. *See* Def.Ex. 2 (collective bargaining agreement); Def. Proposed Findings of Fact 2, 3, 4 (quoting extensively from the collective bargaining agreement).

At the same time, the evidence showed that the procedures concerning promotions and filling some vacant positions involved the use of discretion by LTVAD managers and supervisors. *See* Pl.Ex. 21, 22 (stating that supervisor's written permission needed before hourly employee may request promotion); O'Neal Dep.Vol. I at 24–27 (stating that there are no written guidelines for some promotions), *id.* at 61–63 (discussing discretion of foremen); Fincher Dep. at 73–77 (discussing discretion of supervisor); Tr. I at 101–02 (testimony of Meeks) (stating that collective bargaining agreement guidelines sometimes were not followed); *id.* at 71–74, Pl.Ex. 125 (Mayorga declaration), Pl.Ex. 127 (stating that supervisors sometimes preselected and encouraged certain employees to apply for promotions and dis-

couraged females from applying); Horak dep. at 9–11, 15–17 (discussing training required for some promotions and stating that some trainees are flunked by instructors, all of whom are male). Plaintiffs Mayorga, Bell, and Lantz claim that they were discriminated against because of the discriminatory use of these discretionary practices. *See, e.g.,* Tr. I at 24–25, 29–32 (Lantz testimony) (stating that she has never had a female supervisor, that she has been denied training by her male supervisors, and that all male members of her training class have been promoted more rapidly than she).

There were notable disparities in the numbers of promotions awarded to females during the class period, based on their representation in the labor grades from which persons have been selected to fill vacant positions at the time the promotions were made. These occurred both overall, and when promotions at pay grades 4 and above and 5 and below were analyzed separately. These disparities are highly significant at generally accepted levels, justifying an inference that the promotional process may discriminate against female employees of LTVAD. *See* Pl.Ex. 82–84; 121 at 24–28.

In addition, there was testimony relating to other discriminatory treatment of female employees at LTVAD. For example, Plaintiff McCauley's supervisor told her that he had to discharge her because the only work left in her department was drilling titanium and he felt that this was too hard for a woman. Male employees holding the same position as plaintiff McCauley who were hired after or at the same time as plaintiff McCauley were not laid off. *See* Pl.Ex. 126 (McCauley declaration).

Likewise, Plaintiff Bell testified as to discrimination she suffered with respect to retaliation. Bell has for over twenty years been attempting to gain a promotion from the entirely female job of production control clerk with LTVAD. In the summer of 1985, she applied for the job of stock chaser (which she has applied for over the years and for which she believes herself qualified) and filed a grievance when such a

position was filled without a posting of the vacancy. Soon after making that grievance, she was transferred to a different LTVAD plant and believes this transfer was a result of her trying to get the job in question. *See* Pl.Ex. 123 (Bell declaration).

During the Christmas holidays of 1988, women, including Bell, were denied the opportunity to work overtime (holiday work provides triple pay). Instead, men were allowed to perform work normally done by those in the position held by Bell over the holidays. Bell requested overtime during that period but was turned down by her foreman.

Finally, Plaintiffs submitted evidence concerning various incidents of sexual harassment, ranging from the open display in the workplace of pictures of nude females to an alleged rape of a female employee by an LTVAD supervisor.

## CONCLUSIONS OF LAW

This action is properly brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1346(e) and 2201. The basic legal issue before the Court is whether Plaintiffs have satisfied the prerequisites to a class action listed in Federal Rule of Civil Procedure 23. That Rule provides:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

....

(2) the party opposing the class has acted or refuses to act on grounds generally applicable to the class, making appropriate final injunctive relief or corre-

sponding declaratory relief with respect to the class as a whole. . . . Fed.R.Civ.P. 23(a), (b)(2). The Court should not consider the merits of plaintiffs' claims in determining if class certification is appropriate. Indeed, the Supreme Court has stated that "[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *see Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir.1971) (Wisdom, J.) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met.").

Plaintiffs must satisfy the Rule 23 requirements for each of the subclasses composing the plaintiff class. Plaintiffs' proposed class consists of the following subclasses:

a. females who have been denied employment because of their sex;

b. female employees who were discriminated against in job assignment and pay because of their sex through initial assignment to low-paying female-dominated jobs, assignment to lower pay rates within a given job, and denial of promotion and transfer opportunities;

c. female employees who have been disciplined or discharged because of their sex, including actions taken in retaliation for asserting the right not to be discriminated against on the basis of sex and actions taken as a result of pregnancy; and

d. female employees who have been sexually harassed because of their sex.

Joint Pretrial Order, filed January 24, 1990, at 2–3.

The Court notes that in their Post–Hearing Brief on Class Certification, Plaintiffs contend that there are different subclasses, namely: (a) hiring/job assignment/pay, (b) promotions, (c) discharge and discipline, and (d) sexual harassment. Plaintiffs' new classification of the subclasses in this suit cannot stand. First, lumping together women who were denied employment with those who were employed but allegedly discriminated against in their job assignments and pay simply makes no sense. Second, the Joint Pretrial Order establishing the four subclasses controls this issue. *See* Scheduling Order entered February 22, 1989, at 2 (noting that the joint pretrial order controls all subsequent proceedings in the case).

Similarly, Defendants in their submissions of proposed findings of fact and conclusions of law, as well as their posthearing brief, argue that a proposed subclass may fail for lack of a named plaintiff for one portion of the subclass. The Court finds that the proposed subclasses are sufficiently specific to protect Defendants from an across-the-board assault on their employment practices. The Court also finds that each proposed subclass is composed of logically and practically related parts; for example, it is senseless to artificially divorce job placement from pay, promotion and transfer.

"The power to create a subclass is clear and unambiguous. Who should be included and how large it should be are questions that only the District Court should resolve." *Eisen v. Carlisle & Jacquelin,* 417 U.S. at 181, 94 S.Ct. at 2154 (Douglas, J., dissenting in part); Fed.R.Civ.P. 23(c)(4) ("When appropriate . . . a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.").

### I. LTVAD's Decisionmaking Process

■ The Court first addresses Plaintiffs' contention that the decisionmaking process at LTVAD was "entirely subjective" because the finding of an entirely subjective decisionmaking process would mean that Plaintiffs could maintain an "across-the-board" class action.

Before the Supreme Court's decision in *General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Fifth Circuit had an across-the-board class action rule in discrimination cases.

That rule was enunciated in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir.1969), and had permitted "any victim of racial discrimination in employment [to] maintain an 'across the board' attack on all unequal employment practices alleged to have been committed by the employer pursuant to a policy of racial discrimination." *General Telephone Co. v. Falcon*, 457 U.S. at 152, 102 S.Ct. at 2367.

*Falcon*, however, virtually eliminated the across-the-board rule, leaving only a vague possibility that it may be used in cases where employers have entirely subjective decisionmaking processes. Writing for a Court that was unanimous on this point, Justice Stevens found that "[i]f one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation." *Id.* at 159, 102 S.Ct. at 2371. However, Justice Stevens stated that an exception to this ban on across-the-board actions might exist: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify [an across-the-board class action] if the discrimination manifested itself ... in the same general fashion, such as through entirely subjective decisionmaking processes." *Id.* n. 15.

Plaintiffs contend that the "entire LTVAD hiring system is characterized by the exercise of unfettered discretion by male decision-makers," that this "discretion extends to the assignment of initial pay," that "women were initially placed into lower-paying jobs apparently for no reason other than their gender," and that "the unfettered discretion of male decision-makers also haunts female employees who wish to obtain promotions or transfers." Pl. Br. at 4, 5, 6. According to Plaintiffs, the evidence supporting these claims establishes that the relevant decisionmaking processes at LTVAD are entirely subjective and therefore an across-the-board class action should be certified.

Although it is true that the decisionmaking process at LTVAD contains elements of subjectivity and personal discretion by managers, it simply is not true that the decisionmaking processes complained of by Plaintiffs are entirely subjective or that male decisionmakers exercise unfettered discretion. The most important restraint on the discretion of LTVAD's decisionmakers is the collective bargaining agreement, which provides rules and standards governing virtually all of the decisionmaking processes at issue in this case. The Fifth Circuit has stated that

> qualifications required by collective bargaining agreements provide valid criteria which inject an element of objectivity into the promotion process. Thus, we note that although inclusion of objective standards in the collective bargaining agreement does not eliminate the subjectiveness of an employment practice, it does aid in reducing the possibility that employees will be subjected to discriminatory treatment as a result of discretionary decisionmaking.

*Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1054 (5th Cir.1984) (citing *Hamilton v. General Motors Corp.*, 606 F.2d 576, 580 (5th Cir.1979), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980)).

Plaintiffs rely on *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir.1972), in arguing that the decisionmaking process at LTVAD is entirely subjective. In *Hamilton v. General Motors Corp.*, however, the Fifth Circuit distinguished *Rowe* on the basis of a collective bargaining agreement.

> In *Rowe* we found a promotion procedure requiring a recommendation of the immediate foreman to be inconsistent with Title VII. The recommendation included an experience factor which no black could then meet.... 

> In the instant case, unlike *Rowe*, there is a valid objective criterion, the qualification required by the collective bargaining agreements. We are not prepared to say that the existence of subjective oral interviews in the employment process will render that process per se discrimi-

natory where there are meaningful, known objective standards involved.

*Hamilton v. General Motors Corp.,* 606 F.2d 576, 580 (5th Cir.1979), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980).

The Court finds that the existence, throughout the period pertinent to this suit, of a collective bargaining agreement governing many of the decisionmaking processes at issue establishes that the process was not entirely subjective.[3] Accordingly, the Court need not reach Defendants' further argument that LTVAD's Equal Employment Opportunity and Affirmative Action program and its use of job descriptions and personnel directives in the employment decisionmaking process prove that the standard of *Falcon*'s footnote 15 has not been met.

## II. Union Representation

■ Before addressing each subclass for which certification is sought, the Court addresses the issue of whether the unions involved in this case may properly serve as class representatives for any of the subclasses.

Plaintiffs seek the certification as class representatives of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO and its Local 848 (collectively, the "UAW"). Defendants challenge the certification of the UAW as a class representative, arguing that after *General Telephone Co. v. Falcon,* "labor unions cannot

be Rule 23 representatives of a class of employees because unions are not employees; unions do not possess the same interests as employees; and unions do not suffer the same alleged injuries as employee class members." Def. Br. at 19. Defendants also argue that even if a union may be a class representative after *Falcon,* the UAW should not be certified as a class representative in this case because it will not protect the interests of the class as required by Federal Rule of Civil Procedure 23(a)(4).

### A. General Telephone Co. v. Falcon.

Defendants do not dispute the fact that labor unions have in the past been found to be proper class representatives pursuant to Federal Rule of Civil Procedure 23. Defendants contend, however, that the "inexorable logic of *Falcon*" and subsequent cases leads to the conclusion that "the Unions cannot be representatives of plaintiffs' alleged class of female employees discriminated against in placement, pay, or promotions." Def.Br. at 20.

■ The two main cases Defendants rely on in addition to *Falcon* are *Blum v. Yaretsky,* 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982), and *Vuyanich v. Republic National Bank,* 723 F.2d 1195, 1200 (5th Cir.1984). The issue raised by the UAW's request to be certified as a class representative falls squarely within the ambit of Rule 23(a) and *Falcon; Blum* and *Vuyanich* add little to Defendants' argument.[4]

---

3. Defendants seem to say that the only reason there are subjective elements in the LTVAD decisionmaking process is the fact that "human beings are involved". Def. Reply Br. at 4. The collective bargaining agreement provides, however, that

> the Company has responsibility for selecting, hiring and demoting employees as well as making and applying rules and regulations for production, discipline, efficiency and safety. It also has the right and responsibility to discharge or discipline any employee for just cause, to lay off any employee because of other work or other cause, and to transfer and promote any employee.

Def.Ex. 2 at 1–2. Clearly, in those areas covered by this clause, the Company does have unfettered discretion.

4. *Blum v. Yaretsky,* an opinion primarily concerning the doctrine of state action under the fourteenth amendment, included a brief and straightforward discussion of standing, stating, *inter alia,* that "[i]t is not enough that the conduct of which the plaintiff complains will injure *someone.* The complaining party must also show that he is within the class of persons who will be concretely affected." *Blum v. Yaretsky,* 457 U.S. at 999, 102 S.Ct. at 2783. In *Vuyanich v. Republic National Bank,* the Fifth Circuit quoted this passage from *Blum* in support of its conclusion that plaintiffs could not maintain an across-the-board class action because they lacked standing to sue for claims arising from conduct that caused them no injury. *See Vuyanich v. Republic National Bank,* 723 F.2d at 1200.

In *Falcon* a single incumbent employee who had been denied promotion tried to sue on behalf of a class of persons "who have been employed, are employed, or may in the future be employed ... and who have applied or would have applied for employment." *General Telephone Co. v. Falcon*, 457 U.S. at 151, 102 S.Ct. at 2367. The issue the Court addressed in *Falcon* was the propriety of the "across-the-board" class action certified by the district court— that is, "whether the class action was properly maintained on behalf of both employees who were denied promotion and applicants who were denied employment."[5] *Id.* at 155, 102 S.Ct. at 2369. Although the Court agreed "with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination," *id.* at 157, 102 S.Ct. at 2370, the Court found that "the error inherent in the across-the-board rule[ ] is the failure to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *Id.* at 160, 102 S.Ct. at 2372. Accordingly, the Court held that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161, 102 S.Ct. at 2372.

In this case, the real issue raised by *Falcon* is whether the UAW may be certified as a class representative pursuant to Rule 23(a). In *Falcon*, the Supreme Court held that a class representative must be a member of the class and must have the same interest and suffer the same injury as the class he represents. *See id.* at 156, 102 S.Ct. at 2369–70 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431. U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974)). The Court also stressed that " 'careful attention to the requirements of Fed.Rule Civ.Proc. 23 [is] indispensable' " and that the " 'mere fact that a complaint alleges ... discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of the discrimination.' " *Id.*, 457 U.S. at 157, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405–06, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977)).

The *Falcon* Court held that in order for a class action to be maintained, there must be a representative plaintiff who meets Rule 23's requirements for each type of discrimination claimed; the era of facile across-the-board class actions was closed. The Court's focus in *Falcon* was on the types of claims asserted against the defendant, and the Court held that a class cannot be certified for claims for which there is no named plaintiff who satisfies the Rule 23 requirements. As one court described the decision, "the primary thrust of *Falcon* was that satisfaction of Rule 23(a) requirements may not be *presumed*." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir.1986). Although Defendants claim that the "inexorable logic" of *Falcon* and subsequent cases precludes the UAW from serving as class representative, none of those cases actually holds that a union cannot be a class representative.[6]

---

Although *Blum* and *Vuyanich* use the terminology of standing instead of the requirements of Rule 23(a), the point is the same: " 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.' " *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. at 156, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896–97, 52 L.Ed.2d 453 (1977); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–30, 41 L.Ed.2d 706 (1974)). Accordingly, the Court focuses on the holding of *Falcon* rath-

er than the "inexorable logic" of *Falcon*, *Blum*, and *Vuyanich* perceived by Defendants.

5. *See supra* Section I (discussing LTVAD's decisionmaking process and "across-the-board" class action litigation after *General Telephone Co. v. Falcon* ).

6. Defendants cite *Frazier v. Conrail*, 41 FEP Cases (BNA) 665 (D.D.C.1986), where the district court discussed *Falcon* and rejected the NAACP as a class representative of railroad employees. On appeal, the D.C. Circuit affirmed the district court's denial of certification. *See Frazier v. Consolidated Rail Corp.*, 851 F.2d

Indeed, both sides acknowledge that there are post-*Falcon* cases allowing class representation by unions. *See California Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (affirming certification of unions as class representatives over challenge that unions fail the commonality requirement of Rule 23 by finding that associational standing of unions means that they act on behalf of class members); *Clark Equipment Co. v. International Union, Allied Industrial Workers*, 803 F.2d 878, 880 (6th Cir.1986) (per curiam), *cert. denied*, 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987) (holding that "unions have standing to represent a class, even if the union itself alleges no specific injury," and finding proper the union's representation of nonunion class members); *American Federation of State, County and Municipal Employees v. County of Nassau*, 664 F.Supp. 64, 68–69 (E.D.N.Y.1987) (discussing *Falcon* and finding proper "the service of plaintiff AFSCME, the union of the class members, as a class representative").

Furthermore, it is clear that an EEOC charge filed by a union on behalf of its members may be the operative charge for those members who wish to file suit, since the purposes of Title VII's jurisdictional prerequisites are served by the union's filing. The purposes of the statutory filing requirement are (1) to provide notice to the charged party, (2) to enable the parties to reconcile the grievance, and (3) to do so within a reasonable time. *See Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1139 (5th Cir.1971). Because the members may rely on the union's EEOC filing, it would subvert the remedial purposes of Title VII and undermine the rights of individual plaintiffs who did not file an EEOC charge if the UAW were removed as a named plaintiff years after the suit was filed at least partly on the basis of a right to sue letter granted to the UAW. *See infra* section IV (discussing *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384 (5th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984)).

The Court discusses Title VII because that statute answers LTVAD's "Rule 23 standing" concerns. The metaphysical gist of Defendants' argument that *Falcon* precludes the UAW from being a representative plaintiff is that a union is not a person.[7] Defendants' argument is defective because it fails to address the fact that for the purposes of Title VII, a union *is* a person. *See* 42 U.S.C. § 2000e(a) (defining the term "person" as including labor unions). Accordingly, because a union is a person under Title VII, a union may also be a "person aggrieved" or a "person claiming to be aggrieved" who has standing to sue under Title VII—that is, a member of an aggrieved class. To put the matter simply, a union may be a representative plaintiff in a class action lawsuit brought pursuant to Title VII.

For the purpose of this case, the short of the matter is that *Falcon* did away with nearly all across-the-board class actions and said nothing about the propriety of a union's representing a plaintiff class. The Court finds that the UAW is not barred from representing a class or subclasses by *Falcon*.

### B. Rule 23(a).

Merely because the UAW is not barred from representing the class by *Falcon* does

---

1447, 1456 (D.C.Cir.1988). The circuit court noted the difference between associational standing and the requirements of Rule 23, calling associational standing "irrelevant to [the] analysis of the propriety of class certification pursuant to Rule 23." *Id.* The circuit court affirmed the district court's decision to deny certification because the district court found the potential class to be too small to satisfy Rule 23's so-called numerosity requirement and because of "the more important consideration that the plaintiffs had failed to carry their burden of demonstrating that joinder was impracticable." *Id.* In short, although the district court in *Frazi*-*er* denied certification partly because "[t]he NAACP is not part of the class it seeks to represent," *Frazier v. Conrail*, 41 FEP Cases (BNA) 665, the circuit court ignored the district court's *Falcon* analysis and based its decision on the factual finding that there were too few potential plaintiffs to warrant a class action.

7. More properly put, Defendants' position is as follows: a union is not a person; therefore, it cannot be a member of a class of persons discriminated against by LTVAD; therefore, it cannot be a representative plaintiff under Rule 23.

not mean that the UAW's request to be certified as a class representative must be granted, for the Court first must be convinced, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *see* Fed.R.Civ.P. 23(a)(1)–(4) (listing prerequisites to a class action). The Court finds that the UAW, both by its EEOC charge and by its continuing participation in this lawsuit, has raised questions of law or fact common to the class, and that the claims of the UAW are typical of the claims of the class. Accordingly, the union satisfies the requirements of Rule 23(a)(2) and (3).[8] There is some question, however, of the UAW's ability to fairly and adequately protect the interests of the class pursuant to Rule 23(a)(4).

■ Defendants argue that the UAW is not an adequate representative of the plaintiff class in this case. Defendants first contend that the UAW is an inadequate representative because the union is overwhelmingly male, particularly in its leadership positions. Defendants also argue, relying primarily on a law review note, that the potential conflicts between the female class members' claims and the UAW's duties to its mostly male membership render adequate representation unlikely.

Although these considerations are relevant to a Rule 23 inquiry, the Court does not consider them controlling. The Court notes that the numbers of women officers in the UAW and its Local are disturbingly low for organizations seeking to represent female plaintiffs. Nonetheless, there is no evidence that the UAW cannot zealously represent the interests of women · simply because most of its members and officers are male. Likewise, although Defendants' claims of intraclass conflicts should the UAW be certified as a class representative

have some factual foundation, they are largely speculative.[9]

The Court believes the UAW will adequately represent the interests of the class members in this lawsuit. The UAW filed an EEOC charge of discrimination on behalf of the class in May of 1985, and amended that charge a month later. The UAW has undertaken to finance this lawsuit, and there is no question that the attorneys the UAW has retained are experienced and skilled in this sort of litigation. Perhaps most importantly, there is no evidence that members of the class object to the UAW's involvement; indeed, the UAW appears to be their chosen vehicle for expressing their grievances.

■ Although the Court finds that the UAW may be a representative plaintiff, the union may not represent every subclass of plaintiffs; the Court will not permit the UAW's participation in this lawsuit to be an end-run around the clear ruling of *Falcon* that one allegation of discrimination cannot support an across-the-board attack on a corporation's employment practices. *See General Telephone Co. v. Falcon,* 457 U.S. at 159, 102 S.Ct. at 2371.

Accordingly, the Court finds that the UAW cannot represent women applicants denied employment with LTVAD, for they never were union members. Also, for reasons discussed more fully below, the Court finds that Plaintiffs' sexual harassment claims cannot be maintained as a class action. Finally, because the UAW's EEOC charge does not allege any claims concerning discipline or discharge, the UAW may not represent that subclass of plaintiffs. Accordingly, the Court finds that the UAW fulfills the Rule 23 requirements for representing only the plaintiff subclass consisting of female employees who were discrimi-

---

8. The Court addresses the so-called numerosity requirement of Rule 23(a)(1) in its discussion of each proposed subclass.

9. The Court notes that two types of intraclass conflict are inherent in any class action: conflict over the existence of the lawsuit, and conflict over the conduct of the lawsuit. Rule 23's provision that notice and an opportunity to opt

out of the litigation may be provided to all potential class members remedies these problems. *See* Note, *Due Process and Equitable Relief in State Multistate Class Actions After* Phillips Petroleum Co. v. Shutts, 68 *Texas L.Rev.* 415, 438–39 (discussing intraclass conflict in class actions).

nated against in job assignment, pay, promotion, and transfer because of their sex.

### III. Female Applicants Denied Employment

■ Plaintiffs' request for certification of a subclass of female applicants denied employment at LTVAD because of discriminatory hiring practices must fail for want of a representative plaintiff.[10]

Barbara McCauley applied for employment at LTVAD in February of 1985, and she was hired by LTVAD on March 4, 1985. Subsequently, on May 17, 1985, McCauley was terminated from employment. The termination occurred during her probationary period. McCauley filed a Charge of Discrimination with the EEOC alleging discriminatory discharge. Her EEOC Charge does not allege any discrimination in the hiring process.

Kristi Mooney Wilson applied for a job at LTVAD in 1985. Plaintiffs' counsel filed an EEOC Charge of Discrimination on her behalf in April, 1986. Wilson subsequently was offered a job at LTVAD, which she accepted. Wilson quit her job without any notice to her employer before the end of her ninety-day probationary period.

The basic fact of the matter is that the two proposed representative plaintiffs simply are not representative of the class of female applicants denied employment at LTVAD because of their sex because both McCauley and Wilson were hired by LTVAD.[11] "A person simply cannot represent a class of which [s]he is not a member." *Long v. District of Columbia*, 469 F.2d 927, 930 (D.C.Cir.1972), *quoted in*

*Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir.1981). These Plaintiffs obviously cannot show that their claims are typical of the claims of the class of female applicants denied employment by LTVAD, and therefore neither Wilson nor McCauley meet the requirements of Rule 23. *See Redditt v. Mississippi Extended Care Centers, Inc.*, 718 F.2d 1381, 1387 (5th Cir.1983).

Accordingly, Plaintiffs' motion for certification of a subclass of female applicants denied employment at LTVAD because of discriminatory hiring practices is DENIED.

### IV. Assignment, Pay, and Promotion

■ Plaintiffs move for certification of a class consisting of female employees who were discriminated against in job assignment and pay because of their sex through initial assignment to low-paying female-dominated jobs, assignment to lower pay rates within a given job, and denial of promotion and transfer opportunities.

Defendants initially object to certification of this subclass because "[t]here is no individual plaintiff who can represent this proposed class." Def.Br. at 18. Defendants contend that either no proposed class representative has filed an EEOC Charge alleging this type of discrimination or that no proposed class representative meets the Rule 23 requirements. Although the Court already has ruled that the UAW may represent this subclass and found that the UAW filed an EEOC charge, the Court will discuss Defendants' concerns regarding this subclass.

---

**10.** Plaintiffs appear to argue that the UAW should be allowed to represent the class of rejected female applicants because "[t]he hiring process ... can be closely related to the promotion process" and "[t]his entire process is of clear concern to incumbent employees" who are represented by the UAW. Pl.Br. at 38, 37. The Court has already determined that the UAW is not fit to be certified as a representative plaintiff of this subclass because no rejected applicants were UAW members.

In addition, Plaintiffs contend that Jamey Hamrah, Della Willis, Ruby Roberts, Sharon Mitchell, Karen Namani, and Jo Ann Hopson are representative plaintiffs in the newly-asserted "hiring/job assignment/pay" subclass. *See* Pl.Br. at 46. The Court has already rejected

Plaintiffs' attempt to recategorize the subclasses in this lawsuit, and also has denied the most recent motion to intervene of Jamey Hamrah, Della Willis Ruby Roberts, Sharon Mitchell, Karen Namani, and Jo Ann Hopson. Accordingly, the only plaintiffs to be considered for this subclass are Kristi Mooney Wilson and Barbara McCauley. *See* Pl.Br. at 45; Plaintiffs' Replacement Brief in Support of Motion for Certification as a Class Action, filed January 16, 1990, at 20 n. 7.

**11.** The Court notes that Wilson was still an applicant at the time this lawsuit was filed. Her charge that she was denied employment because of her sex was rendered moot by LTVAD's offer of employment.

The Court first addresses Defendants' concerns about the EEOC Charges. The purpose of filing a charge with the EEOC is to provide the Commission an opportunity to investigate and attempt a resolution of the controversy through conciliation before permitting the aggrieved parties to pursue a lawsuit. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974). Because persons filing charges with the EEOC typically lack legal training, the charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII. *See E.E.O.C. v. Michael Construction Co.*, 706 F.2d 244, 248 (8th Cir.1983), *cert. denied*, 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984). Accordingly, the sweep of any subsequent judicial complaint may be as broad as the EEOC "investigation which could reasonably be expected to grow out of the charge of discrimination." *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985).

Defendants do not deny that Plaintiff McCauley filed an EEOC charge and received a right to sue letter. *See* Pl.Ex. 2, 3. Although McCauley's EEOC statement regarding "Personal Harm" states only that she was discharged, her "Discrimination Statement," as well as her declaration admitted as testimony at the hearing, includes complaints concerning LTVAD's refusal to allow her to transfer her to another area. Given the liberal rules of construction to be applied to EEOC charges, the Court finds that McCauley's charge of discrimination in her conditions of employment is sufficient for her to be a class representative for this subclass.

In addition, the Court finds that the UAW filed an EEOC charge on behalf of its members alleging continuing acts of discrimination "against female employees by promotions, wage levels and benefits." Pl.Ex. 2 (Amended Charge of Discrimination). The question that the Court next addresses, then, is whether an EEOC charge filed by a labor organization representing the affected employees and clearly indicating the alleged discriminatory treatment of a class of employees confers standing on members of that class to join as class representatives in the lawsuit.

In *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir.1968) (cited in Def.Br. at 18), the Fifth Circuit held that it was unnecessary for all of the named plaintiffs in a class action to file a charge with the EEOC as long as one of the representative plaintiffs did so. Because the UAW may represent this Plaintiff subclass, the Court finds that other Plaintiffs need not have filed EEOC charges in order to properly be Plaintiffs in this action.

Allowing the filing of an EEOC charge by a collective bargaining unit to be the operative charge for aggrieved union members who wish to file suit serves the purposes of Title VII's jurisdictional requirements. In addition, members of the union may have relied on the union's filing and decided not to file themselves. By not allowing the union's charge to be the operational one, the courts might preclude any union member from becoming an individual plaintiff and class representative in an otherwise viable class action.

*Association of Flight Attendants v. Texas International Airlines, Inc.*, 89 F.R.D. 52, 57 (S.D.Tex.1981).

Indeed, Fifth Circuit case law establishes that the UAW need not even be a representative plaintiff for its charge to be effective on behalf of individual Plaintiffs. In their Reply Brief, Defendants directed the Court's attention to the fact that "[i]n *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384 (5th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984), the Fifth Circuit directed that two individual plaintiffs, not a union, be certified as class representatives." Def. Reply Br. at 5–6. Significantly, "[a]t the time the lawsuit was filed, the [union] was certified by the National Labor Relations Board as the exclusive bargaining agent for the plant employees. *The individual plaintiffs did not file EEOC charges, but instead relied on that filed by the union.*" *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384, 1385 (5th Cir.1983), *cert. denied*, 465 U.S. 1006,

104 S.Ct. 999, 79 L.Ed.2d 231 (1984) (emphasis added).

Indeed, the named plaintiffs' ability to rely on the union's EEOC charge even survived the subsequent withdrawal of the union's representational status as bargaining agent. *See id.* The Fifth Circuit "reverse[d] the court's denial of class certification and instruct[ed] the court below to certify [the individual plaintiffs] as class representatives...." *Id.* at 1394. In light of this Fifth Circuit ruling, even if the Court errs by certifying the UAW as a representative party for this subclass, it is clear that the remaining named plaintiffs may rely on the UAW's EEOC charge in maintaining this lawsuit.

Upon careful review of the evidence presented at the hearing, the Court finds that Plaintiffs' motion for certification of a class consisting of female employees who were discriminated against in job assignment and pay because of their sex through initial assignment to low-paying female-dominated jobs, assignment to lower pay rates within a given job, and denial of promotion and transfer opportunities should be, and is, GRANTED.

There is no question that Plaintiffs have satisfied the so-called numerosity requirement of Rule 23, given that over 1000 women were employed by LTVAD during the class period. In addition, Plaintiffs' statistical evidence indicates that a large number of these female employees may have suffered from the alleged discrimination.

Defendants vigorously contest the validity of Plaintiffs' statistical evidence, and present sophisticated statistical evidence of their own, but it is not the proper function of the Court to evaluate the merits of Plaintiffs' claims or LTVAD's defenses at this point in the lawsuit. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177, 94 S.Ct. at 2152 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Redditt v. Mississippi Extended Care Centers, Inc.,*

718 F.2d at 1387 (finding error in the district court's denying class certification by considering the merits of the claims and holding that in deciding to grant or deny certification the district court "must determine whether the case meets the four requirements of ... Rule 23(a), and, in addition, whether the action fits within one of the categories described in Rule 23(b)").

As the Court's discussion of the UAW's status as representative plaintiff made clear, the Court finds that the UAW meets the requirements of Rule 23(a)(2), (3), and (4). *See supra* Section II. Plaintiff McCauley also has met the jurisdictional requirements of Title VII, raises questions of law and fact common to the subclass, asserts claims typical of the claims of the subclass, and will fairly and adequately represent the interests of the subclass. Furthermore, after *Boykin* it is clear that Plaintiffs Wilson, Mayorga, Bell, and Lantz may rely on the union's EEOC charge and proceed as named plaintiffs in this action. Upon review of their testimony, by declaration and in person at the hearing, the Court is convinced that they raise questions of law and fact common to the subclass, assert claims typical of the claims of the subclass, and will fairly and adequately represent the interests of the subclass.

## V. Discipline and Discharge

■ In their prehearing brief filed in January, 1990, Plaintiffs stated that Beverly Candrilli, Kimberly Thornton, Selina Griffin, and Barbara McCauley suffered discrimination in discipline and discharge at LTVAD. In their posthearing brief, Plaintiffs state that the representative plaintiffs for this proposed subclass are McCauley, Wilson, and Loretta Jon Bell. The Court here considers only the latter three Plaintiffs.

As noted above, Kristi Mooney Wilson applied for a job at LTVAD in 1985. Plaintiffs' counsel filed an EEOC Charge of Discrimination on her behalf in April, 1986. Wilson subsequently was offered a job at LTVAD, which she accepted. Wilson quit her job without any notice to her employer before the end of her ninety-day probationary period. Having quit her job, Wilson

clearly cannot represent plaintiffs who were discharged from LTVAD.

The Court is unable to discern an allegation of discrimination in discipline in the declaration of Loretta Jon Bell, *see* Pl.Ex. 123 at 1–3, and Plaintiffs offer no other evidence that she was a victim of such discrimination. Indeed, the word "discipline" is not even used in Bell's declaration. Although Bell states that she feels her transfer to a the LTVAD Jefferson Street facility was "a result of [her] trying to get the stockchasers job," *see id.* at 2, there is no indication that this transfer was any sort of disciplinary action on the part of LTVAD. The Court finds that Bell has not alleged discriminatory treatment in discipline at LTVAD. Because she is still employed by LTVAD, she obviously cannot represent a class of female employees who have been discharged because of their sex. Accordingly, the Court finds that she may not serve as a class representative for this proposed subclass.

As noted above, McCauley applied for employment at LTVAD in February, 1985, and she was hired by LTVAD on March 4, 1985. Subsequently, on May 17, 1985, McCauley was terminated from employment. The termination occurred during her probationary period. McCauley filed a Charge of Discrimination with the EEOC alleging discriminatory discharge.

Defendants argue that McCauley cannot be a class representative because she was a probationary employee at the time of her discharge, and that "[u]nder the Collective Bargaining Agreement, layoff or discharge within an employee's first ninety days (the "probationary period") is at the discretion of the company." Def.Br. at 45 (citing Def.Ex. 2, p. 45). This argument fails on its face: LTVAD's discretionary right to discharge within the probationary period cannot include the right to discharge an employee for an illegal, discriminatory reason. To so argue would mean that the Collective Bargaining Agreement trumps federal law.

Defendants also repeatedly ask the Court to evaluate the merits of Plaintiffs' discipline and discharge claim in determining the issue of subclass certification. At this point in the proceedings, however, the Court cannot address the adequacy of evidence supporting the merits of Plaintiffs' claims or LTVAD's defenses. *See Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d at 1387 (finding error in the district court's denying class certification by applying a preponderance of the evidence standard and holding that in deciding to grant or deny certification the district court "must determine whether the case meets the four requirements of ... Rule 23(a), and, in addition, whether the action fits within one of the categories described in Rule 23(b)"); *Miller v. Mackey International,* 452 F.2d at 427 (Wisdom, J.) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met.").

The Court now turns to the requirements of Rule 23. Plaintiffs allege a class of 98 discharged female employees; the Court finds this number sufficiently great to satisfy Rule 23's requirement that "the class [be] so numerous that joinder of all members is impracticable." Second, Rule 23 requires that "there [be] questions of law or fact common to the class." In McCauley's case, although the factual situations of discharged women may vary, depending on whether the female employees were discharged during their probationary period, the legal questions concerning sex discrimination are common to the class. Similarly, McCauley's claims are typical of those of the class—namely, discharge on account of sex. Finally, the Court believes McCauley will "fairly and adequately protect the interests of the class," and notes that Defendants do not challenge her request for representative status on that ground.

Accordingly, the Court GRANTS Plaintiffs' motion for certification of a subclass of female employees who have been discharged because of their sex.[12]

---

12. The Court notes that although Plaintiffs have moved for certification of a class composed of

### VI. Sexual Harassment

 Plaintiffs move for certification of a class composed of female employees of LTVAD who have been sexually harassed because of their sex. This request must be denied.

The sexual harassment claims raised by Plaintiffs are very individual and varied. Plaintiff Beverly Candrilli–Iles complained that she was raped by an LTVAD supervisor. Haydee Mayorga and Elaine Lantz complained of the display of photographs of nude women in the LTVAD work area and, on one occasion, of an offensive clay model. Ora Colston complained at the hearing of being harassed and ridiculed because of her sex repeatedly. Jo Ann Hopson testified about offensive materials being posted at LTVAD, and also related an incident where an LTVAD manager showed an X-rated movie to a female employee.

In short, there is evidence indicating that incidents of sexual harassment occur at LTVAD. Nonetheless, as merely reciting the claims of harassment demonstrates, this form of discrimination simply is not amenable to class treatment. The complaints are too individualized, LTVAD's defenses to these varied claims are likely to be very fact-specific, and including these claims in the larger class action would cause the case to devolve into a series of individual trials.

Accordingly, Plaintiffs' motion for certification of a class composed of female employees of LTVAD who have been sexually harassed because of their sex is DENIED.

### VII. Conclusion.

For the reasons stated above, Plaintiffs' motion for certification of a subclass consisting of females who have been denied employment at LTVAD because of their sex is DENIED. Plaintiffs' motion for certification of a class consisting of female employees who were discriminated against in job assignment and pay because of their

sex through initial assignment to low-paying female-dominated jobs, assignment to lower pay rates within a given job, and denial of promotion and transfer opportunities is GRANTED. Plaintiffs' motion for certification of a subclass consisting of female employees who have been discharged because of their sex is GRANTED. Plaintiffs motion for certification of a class consisting of female employees of LTVAD who have been sexually harassed because of their sex is DENIED.

Accordingly, Plaintiffs have satisfied the requirements of Rule 23 and this case may be maintained as a class action with the two subclasses described above. Counsel shall confer and submit a report on the status of settlement negotiations by *noon, April 26, 1991*, and include in that report recommendations for scheduling the trial of this case as well as any matters relating to this proceeding. Also, the parties should discuss the prospects for mediation of this case.

SO ORDERED.

---

female employees who have been disciplined or discharged because of their sex, including actions taken in retaliation for asserting the right not to be discriminated against on the basis of sex and actions taken as a result of pregnancy,

the Court confines its certification of this class to female employees discharged on the basis of sex because there is no evidence supporting certification of a more broadly defined class.